**LAW OFFICES OF**
**BLAKE GOODMAN, PC**

Blake Goodman
Bar Number: 7436
900 Fort Street Mall, #910
Honolulu, HI 96813
E: blake@debtfreehawaii.com
T: (808) 828-4274

*Attorney for Plaintiff*
*Bony Espanto*

## UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| BONY ESPANTO,<br><br>          Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION<br>SERVICES, LLC,<br><br>        Defendant. | **Case No.:** 1:25-cv-98<br><br>**COMPLAINT AND**<br>**DEMAND FOR JURY TRIAL**<br><br>  1. **FCRA, 15 U.S.C. § 1681,** *et seq.* |

Plaintiff Bony Espanto ("Plaintiff"), through counsel, alleges violations of the

Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, against Defendant

Equifax Information Services, LLC ("Equifax" or "Defendant").

//

## I.    INTRODUCTION

1.      Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.,* by the Defendant.  Plaintiff contends that Defendant failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and consequently reported inaccurate information about Plaintiff.   "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## II.    JURISDICTION AND VENUE

2.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3.      Venue in the District of Hawaii is proper pursuant to 28 U.S.C. § 1391 because Defendant regularly transacts business within this District, is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

//

## PARTIES

4.     Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

5.     Plaintiff is a natural person who resides in Waipahu, Hawaii.

6.     Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

7.     Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). On information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street, NW, Atlanta, Georgia 30309 and can be served thru its registered agent Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

8.     During all times pertinent to this Complaint, Defendant was authorized to conduct business in the State of Hawaii and conducted business in the State of Hawaii on a routine and systematic basis.

9.     Defendant regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing

"consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Defendant regularly furnishes consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and is therefore a "consumer reporting agency" ("CRA") as defined by 15 U.S.C. § 1681a(f) of the FCRA.

10.    During all times pertinent to this Complaint, Defendant acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

11.    Any violations by Defendant were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

### III.    FACTUAL BACKGROUND

12.    Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

13.    The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

14.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

15.     The FCRA is intended to ensure CRAs exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because CRAs have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

16.     Defendant, one of the three major consumer reporting agencies (at times referred to collectively as "the CRAs," and individually as a "CRA") in the United States, regularly publishes and distributes credit information about Plaintiff and other consumers through the sale of consumer reports (i.e., credit reports).

17.     Defendant's consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to

rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

18.    Defendant obtains consumer information from various sources. Some consumer information is sent directly to Defendant, and other information must be independently gathered by Defendant, or acquired from third party providers, vendors or repositories, such as computerized reporting services like PACER or Lexis-Nexis.

19.    Defendant also obtains information from other CRAs (who commonly share information).

20.    Defendant regularly seeks out and procures consumer bankruptcy filing and discharge information on a daily basis, with the intention of including it in the consumer reports Defendant sells to third parties for a profit.

21.    The diligence Defendant exercises in uncovering and recording consumer bankruptcy filings is not replicated in Defendant's subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

22.    Defendant's unreasonable policies, procedures, and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681e(b).

23.    Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in its own files.

24.    The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendant) to make lending decisions.

25.    The information Defendant includes in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

26.    FICO Scores are calculated using information contained in Defendant's consumer reports.

27.    FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of the consumer's creditworthiness.

28.    FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

    a.  "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score

considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower the consumer's FICO Score will be.

b. The "amount of debt" a consumer owes has a major impact on his or her credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that the consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact the consumer's credit score.

29.    Lenders also consider a consumer's debt-to-income ratio ("DTI") based on the total amount of debt reported by Defendant in consumer reports.

30.    DTI compares the total amount a consumer owes to the total amount the consumer earns.

31.    Defendant regularly provides information that allows lenders to calculate the "total amount of debt" a consumer owes based on the total debt reported by Defendant.

32.    A consumer's income, however, is not included in his or her consumer report; only his or her amount of debt is.

33.    The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for

consumers to obtain credit, and the worse the credit terms will be (e.g., higher interest, lower credit limits).

34.    A consumer who has obtained a bankruptcy discharge and has a consumer report that is reporting outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account was accurately reporting as having a zero balance.

35.    Defendant is well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have been reaffirmed or successfully challenged in an adversary proceeding, are discharged.

36.    However, Defendant also knows that it is rare for a pre-petition debt to be reaffirmed or successfully challenged in an adversary proceeding.

37.    Further, Defendant knows that if reaffirmation agreements or adversary proceedings exist, they will be explicitly identified on an individual consumer's bankruptcy docket sheet.

38.    Additionally, information indicating that a specific debt has not been discharged, but instead was reaffirmed or successfully challenged through an adversary proceeding, is retrieved from the same sources from which Defendant voluntarily obtained consumer bankruptcy case information.

39.     Defendant also receives information about account reaffirmations or other discharge exceptions directly from furnishers of account/tradeline information.

40.     However, Defendant regularly reports inaccurate information about consumers' debts after they receive a Discharge Order.

41.     Rather than follow reasonable procedures to assure maximum possible accuracy, as required by the FCRA, Defendant frequently reports information regarding pre-bankruptcy debts based on incomplete or knowingly inaccurate information.

42.     Defendant regularly publishes consumer information that conflicts with the information provided by data furnishers, included in Defendant's credit files, contained in public records that Defendant regularly accesses, and/or sourced through Defendant's independent and voluntary efforts.

43.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendant for its inaccurate consumer reporting following a Chapter 7 discharge, including failure to report the discharge.

44.     Therefore, Defendant is on continued notice of its inadequate post-bankruptcy reporting procedures, which often produce inaccurate public record information, balances, and account and payment statuses.

*Allegations Specific to the Credit Reporting of Plaintiff*

45.    Plaintiff filed for a "no asset" Chapter 7 Bankruptcy on or about April 19, 2024, in the United States Bankruptcy Court for the District of Hawaii, petition no. 24-00368.

46.    Plaintiff received an Order of Discharge on or about July 24, 2024.

47.    Thereafter, Plaintiff was not personally liable for his dischargeable debts and those debts have a $0 balance after the bankruptcy discharge.

48.    Defendant prepared one or more consumer reports concerning Plaintiff after Plaintiff was discharged from Chapter 7 Bankruptcy.

49.    The allegations in this complaint against Defendant are based on the reporting by Defendant in Plaintiff's November 5, 2024 consumer disclosure.

50.    Defendant obtained notice of Plaintiff's bankruptcy discharge through its routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by the CRAs in Plaintiff's consumer reports.

51.    In the Public Records section of Plaintiff's consumer report, Defendant included the bankruptcy case number, court, filing date, and the fact that Plaintiff's bankruptcy had been discharged.

52.    Defendant also reported Plaintiff's credit history in individual "tradelines," including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update.

53.    Defendant is aware that it is generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

54.    Defendant should have reported **all** of Plaintiff's dischargeable, pre-petition debt as included in or discharged in Chapter 7 Bankruptcy, and/or with a zero-dollar balance.

55.    Defendant failed to report **all** of Plaintiff's dischargeable, pre-petition debts as included in or discharged in Chapter 7 bankruptcy with a zero-dollar balance.

56.    Defendant inaccurately reported Plaintiff's Pearl Harbor Federal Credit Union account (the "PHFCU Account"), ending with ******9900 and opened in July 2022, which pre-dated Plaintiff's bankruptcy filing.

57.    The PHFCU Account was discharged on or about July 24, 2024. Therefore, the PHFCU Account should have been reported as discharged in bankruptcy, and/or with a zero-dollar balance.

58.    However, Defendant inaccurately reported the PHFCU Account with a balance of $2,643 instead of a zero-dollar balance. Defendant further inaccurately reported the PHFCU Account as a "Charge-Off" account.

59.    Defendant did not indicate that the PHFCU Account was discharged in bankruptcy, or report the PHFCU Account with a zero balance, despite reporting Plaintiff's bankruptcy in the Public Record Information section of Plaintiff's consumer report and indicating that other pre-bankruptcy accounts were "Discharged/Included in Bankruptcy Chapter 7" and carried zero-dollar balances.

60.    The status of "Charge-Off" in the consumer credit reporting industry means that a debt may still be owed, especially where, as here, the tradelines do not include bankruptcy coding such as included in and/or discharged in bankruptcy, or the tradeline indicates there is a balance and/or past due balance owed on the account before or after the "charge-off."

61.    The national consumer reporting agencies specifically acknowledge that a "charge-off" generally means consumers are still legally responsible for paying the debt.

62.     According to Equifax, a charge-off means the lender has written the account off as a loss and the account is closed to future charges. The timeframe is generally between 120 and 180 days after a consumer becomes delinquent, and a charge-off does not mean that the consumer no longer owes the debt; the consumer is still legally obligated to pay the debt.

63.     Notably, the other national consumer reporting agency/agencies, Trans Union and Experian, did not inaccurately report the PHFCU Account like Defendant.

64.     Defendant inaccurately reported that Plaintiff owed a balance that he did not actually owe, and also reported an inaccurate account status.

65.     Defendant inaccurately reported the PHFCU Account as a "Charge-Off" after the PHFCU Account was discharged in Chapter 7 Bankruptcy and therefore had a zero-dollar balance.

66.     Defendant failed to indicate that the PHFCU Account had a zero-dollar balance and/or was included/discharged in Chapter 7 Bankruptcy, and instead inaccurately reported it as a "Charge-Off."

67.     Defendant's reporting of the PHFCU Account is patently false/incorrect and therefore inaccurate.

68.     If not patently false/incorrect, Defendant's reporting of the PHFCU Account is materially misleading and therefore inaccurate.

*Plaintiff's Damages*

69.     Upon information and belief, had Defendant accurately reported the PHFCU Account with a zero balance, Plaintiff's credit scores and/or DTI would have been better.

70.     Defendant's reporting of an additional $2,643 of debt which Plaintiff does not actually owe negatively increases DTI since the debt is substantially greater, but the income is unchanged.

71.     The false increased debt also negatively impacts the 30% of credit score which is based on the debt owed divided by credit limits, which impacts post-discharge consumers even more than those who have not filed bankruptcy.

72.     The inaccurate reporting by Defendant suggests to creditors that Plaintiff is guilty of a bad act and was not deserving of receiving a discharge of the PHFCU Account.

73.     After Plaintiff's bankruptcy discharge, in or around January 2025, Plaintiff applied for credit with Capital One and was approved, but at less favorable terms and a lower credit limit due to Defendant's inaccurate reporting of the PHFCU Account.

74.    Defendant's inaccurate reporting of the PHFCU Account, along with additional information belonging to Plaintiff, was published to multiple potential creditors by Defendant during the process of Plaintiff's credit applications.

75.    As a direct result of Defendant's inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

76.    As a direct result of Defendant's inaccurate reporting, Plaintiff also suffers actual damages in the form of attorneys' fees incurred.

77.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, humiliation, stress, anger, frustration, shock, embarrassment, reputational harm, violation of privacy, and anxiety.

78.    Defendant's conduct exacerbated Plaintiff's frustration during the already stressful post-bankruptcy period by hindering Plaintiff's ability to rebuild his credit.

### IV.    COUNT I
### Violations of the FCRA, 15 U.S.C. § 1681e(b)

79.    Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

80.    The FCRA requires CRAs, like Defendant, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

81.    Defendant negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of Plaintiff's credit information pertaining to pre-bankruptcy debts after he received a Discharge Order.

82.    Defendant independently sought information about Plaintiff's bankruptcy filing and discharge and voluntarily reported the same in Plaintiff's consumer reports.

83.    When Defendant procured and published Plaintiff's bankruptcy information, it had an obligation to ensure it followed reasonable procedures to report the bankruptcy discharge and its effect(s) with maximal accuracy.

84.    Defendant knew or should have known that the effect of a Discharge Order in a no asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in reaffirmation agreement or successfully challenged in an adversary proceeding. Defendant knew or should have known of its obligations under the FCRA, especially pertaining to reporting discharged debt with a zero-dollar balance.

85.     These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving Defendant from which Defendant is on notice of its unreasonable procedures concerning the reporting of discharged debts.

86.     Additionally, Defendant possesses or can easily obtain substantial written materials that detail CRA's duties and obligations under the FCRA, including those that apply when consumers file for Chapter 7 Bankruptcy.

87.     Despite knowledge of these legal obligations, Defendant willfully and consciously breached its known duties and deprived Plaintiff of his rights under the FCRA.

88.     In this case, Defendant inaccurately reported an account that Defendant knew pre-dated Plaintiff's Chapter 7 Bankruptcy, and was included and discharged by Plaintiff's bankruptcy discharge.

89.     Defendant had actual knowledge of Plaintiff's bankruptcy and Discharge Order, as evidenced by the information it published in Plaintiff's consumer reports, including Plaintiff's bankruptcy case number, court, date of filing and date of discharge.

90.     Defendant is also on notice from other tradelines reported by Defendant that indicate Plaintiff's accounts were included in and discharged in bankruptcy.

91.    Defendant received notice of Plaintiff's bankruptcy discharge through public records, its own files, and information provided by data furnishers.

92.    Defendant knows that discharged debts should not be reported as late, past due, or with outstanding balances after the discharge date, and should be reported with a zero-dollar balance.

93.    Yet in this case, Defendant reported the PHFCU Account, which pre-dated Plaintiff's bankruptcy, as a "Charge-Off" account without any indication the account was discharged or had a zero-dollar balance.

94.    Defendant violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report, and by also failing to report accurate information when Defendant knew or should have known the information Defendant is reporting is inaccurate, and/or otherwise contradicted by information known by Defendant, reported to Defendant, and/or reasonably available to Defendant.

95.    Defendant's violations of 15 U.S.C. § 1681e(b) were willful.

96.    Alternatively, Defendant's violations of 15 U.S.C. § 1681e(b) were negligent.

97.    Defendant's inaccurate reporting damaged Plaintiff's creditworthiness.

98.    Plaintiff suffers actual damages, including the above-referenced economic damages, a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by Defendant inaccurately reporting a balance for debts that were discharged in bankruptcy, and otherwise failing to report that the debts were discharged in bankruptcy.

99.    Defendant also suffers interference with daily activities caused by other harm including, but not limited to, emotional and mental anguish, loss of sleep, humiliation, stress, anger, frustration, shock, embarrassment, reputational harm, violation of privacy, and anxiety.

100.    Defendant is a direct and proximate cause of Plaintiff's damages.

101.    Defendant is a substantial factor in Plaintiff's damages.

102.    Therefore, Defendant is liable for actual and statutory damages, punitive damages, attorneys' fees, and costs, as well as other such relief permitted by 15 U.S.C. § 1681, *et seq.*

//

## V.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendant for the following:

(a)    Declaratory judgment that Defendant violated the FCRA, 15 U.S.C. § 1681e(b);

(b)    An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c)    An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d)    An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2);

(e)    An award of costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(f)    Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

//

## VI.   <u>JURY DEMAND</u>

Plaintiff hereby demands a jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 5th day of March 2025.

*/s/ Blake Goodman*
Blake Goodman (SBN: 7436)
LAW OFFICES OF
BLAKE GOODMAN, PC
900 Fort Street Mall, #910
Honolulu, HI 96813
E: blake@debtfreehawaii.com
T: (808) 528-4274

*Attorneys for Plaintiff*
*Bony Espanto*